PATRICK D. ROBBINS (CABN 152288)
Acting United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

JEFFREY BORNSTEIN (CABN 99358)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7289
    FAX: (415) 436-7234
    Jeffrey.bornstein@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. 3:24-CR-00390 WHO |
| Plaintiff, | and |
| v. | NO. 3:24-CR-00524 WHO |
| FRANKLIN HERNANDEZ-TURCIOS, | **UNITED STATES' SENTENCING MEMORANDUM** |
| Defendant. | Date: March 13, 2025<br>Time: 1:30p.m.<br>Court: Hon. William H. Orrick |

**INTRODUCTION AND SUMMARY**

There are two related cases pending before this Court. In the first case, 3:24-CR-00390 WHO (hereinafter, "the New Criminal Case"), the Defendant was arrested on June 3, 2024, by the US Marshal (Dkt. 14) for his drug dealing conduct on April 12. 2024 in San Francisco in the Tenderloin. On December 19, 2024, he pleaded guilty to both counts of an Information charging him with 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) - Possession with the Intent to Distribute Fentanyl, on or about April 12, 2024, in the Tenderloin (Count One), and 8 U.S.C. §§ 1326(a) and (b)(2) - Illegal Reentry Following Removal

UNITED STATES' SENTENCING MEMORANDUM
24-CR-00390 AND 24-CR-00540 WHO    1

(Count Two). A Forfeiture Allegation was also included pursuant to 21 U.S.C. § 853(a).

The second case, 3:24-CR00524 WHO, (hereinafter, "the Form 12") is a supervised release violation matter transferred to the Northern District of California from the District of Arizona arising out of Mr. Hernandez-Turcios' conviction in Arizona for illegal reentry in 2021 in violation of 8 U.S.C. §§ 1326(a) and (b)(1). Supervision commenced on October 8, 2021. In an amended petition filed on August 24, 2024, Mr. Hernandez-Turcios was alleged to be in violation of the terms and conditions of his supervised release based on his drug dealing on April 12, 2024 (Count 1) (the subject matter of his guilty plea in Count One in the New Criminal Case), and his other arrests for drug dealing and probation violations in San Francisco on July 24, 2023 (Counts 2-4) and July 3, 2023 (Counts 5-7); and for violating the special condition that he not return to the United States without permission following his last deportation on November 12, 2021 (Count 8) (the subject matter of his guilty plea in Count Two in the New Criminal Case).

For the reasons set forth in detail below, the United States urges the Court to impose of sentence of 30 months concurrent on each count of the Information. That should be followed by a 12-month consecutive sentence for the Mr. Hernandez-Turcios's blatant violation of the terms and conditions of his earlier supervised release in the Form 12. Following his incarceration on both matters, there should be a term of supervised release of three years based on his conduct in the New Criminal Case. This recommendation would mean a total sentence of 42 months, with three years of supervised release to follow only on the New Criminal Case. Such a sentence is just and appropriate and simplifies the supervision provisions once Mr. Hernandez-Turcios is released from custody.

In the end, it is important to protect the community in this case: Mr. Hernandez-Turcios has repeatedly harmed this community since his initial arrest in 2016. He needs to be deterred from coming back and a message needs to be sent to him and to others that one cannot enter or return to this country illegally without significant repercussions.

**ADMITTED FACTS**

In his Plea Agreement, Dkt. 44, Mr. Hernandez-Turcios admitted the following facts:

> On April 12, 2024, at approximately 1:10 a.m., around Seventh Street and Market, in the Tenderloin neighborhood of San Francisco, I was involved in selling illegal drugs to various people, including selling $20.00 worth of fentanyl in a plastic bag, which was later determined to weigh 2.6 gross grams, to a person who turned out to be an

undercover police officer.

I admit that I was carrying a backpack and that I was found to be in possession of the following illegal controlled substances that I intended to sell and distribute to others: 38.1 gross grams of fentanyl in a plastic bag; 18.8 gross grams of suspected fentanyl in a separate plastic bag; 5.8 gross grams of methamphetamine in a plastic bag; and 7.4 gross grams of cocaine HCL in a plastic bag. I agree that the total converted weight of the drugs I sold and possessed for distribution in this case is between 100 to 400 kilograms of converted drug weight.

I also possessed the $20.00 in marked funds that I received from the undercover officer when I made my sale, along with a digital scale that I was using to measure the drugs for my customers, a cellphone that I also used in connection with my drug dealing, and $372 in United States currency from my prior drug sales.

I admit that I am a citizen of Honduras and that I have no legal status in this country. On or about May 8, 2016, I was arrested by the United States Border Patrol at or near Calexico, California, for illegally entering the United States and was summarily deported in 2018. On January 27, 2019, I was arrested for illegal reentry into the United States and was charged with a violation of 8 U.S.C. §1325. On January 29, 2019, I was convicted and sentenced to 180 days in prison, and I was then deported again. I returned to the United States without permission or authorization and on March 14, 2021, I was arrested again after I reentered the United States, and this time, I was charged with a violation of 8 U.S.C. § 1326, a felony.

I was convicted and sentenced on August 6, 2021, to seven months in custody and three years of supervised release, and thereafter I was again deported on November 12, 2021. I admit that after I was deported in 2021, I came back into the United States without authorization or permission of the Attorney General or the Secretary of the Department of Homeland Security. I was later arrested in both San Francisco and Oakland for drug trafficking offenses in December 2023.[1]

I also admit that I was convicted on March 17, 2017, for the illegal transportation of methamphetamine in violation of California Health and Safety Code § 11379(a), an aggravated felony as defined, in San Francisco Superior Court.

## SENTENCING GUIDELINES ANALYSIS

**I.   Mr. Hernandez-Turcios' Offense Conduct in the New Criminal Case**

Probation concurs with the Sentencing Guideline calculations set forth in the signed Plea Agreement.

For Count One (Possession with Intent to Distribute Fentanyl):

a.   Base Offense Level, U.S.S.G. §2D1.1(c)(8):                                24
     Greater than 100 kg but less than 400 kg of converted drug weight:
     (59.5 grams of fentanyl = 148.75 kg; plus 5.8 grams of methamphetamine = 11.6 kg; plus 7.4 gm of cocaine = 1.48 kg; total: 161.83 kg converted drug weight)

---

[1] See Dkt. 8, Pre-Bail Report, showing his arrests for alleged drug dealing and probation violations in San Francisco and Oakland in July 2023. These cases were later dismissed when the United States prosecuted the New Criminal Case.

| | | | |
|---|---|---|---|
| | b. | Adjusted Offense Level: | 24 |

For Count Two (Illegal Reentry after Sustaining an Aggravated Felony Conviction):

| | | | |
|---|---|---|---|
| | a. | Base Offense Level, U.S.S.G. § 2L1.2 | 8 |
| | b. | Enhancement for a prior felony | +4 |
| | c. | Additional Enhancement for a subsequent felony | +4 |
| | d. | Adjusted Offense Level: | 16 |

Grouping Analysis:

| | | | |
|---|---|---|---|
| | a. | Highest Group Adjusted Offense Leve (Count One): | 24 |
| | b. | Grouping adjustment, U.S.S.G. § 3D1.4:<br>First Group = 1 Unit, plus Second Group (8 level difference) = 1/2 Unit<br>= Total: 1 and 1/2 Units | +1 |
| | c. | Adjusted Offense Level | 25 |
| | d. | Acceptance of Responsibility, U.S.S.G. § 3E1.1: | -3 |
| | Total Offense Level | | 22[2] |

## II.  Mr. Hernandez-Turcios's Criminal History

The PSR found that Mr. Hernandez-Turcios has five prior criminal history points for convictions in 2017 for a violation of HS 11379(a), an aggravated felony related to methamphetamine; in 2019 for illegal entry in violation of 8 U.S.C. § 1325 in Arizona; and for a second illegal reentry in Arizona and conviction for a violation of 8 U.S.C. § 1326(a) and (b)(1). He also has 5 known aliases and three alternate birthday identifiers in his records. *See* PSR at pg. 3. Mr. Hernandez-Turcios is in Criminal History Category III.

## III. Mr. Hernandez-Turcios's Guidelines Sentencing Range in the New Criminal Case

A Total Offense Level of 22 with a Criminal History Category III yields a Guideline sentencing range of **51-63 months**. The United States agreed in the plea Agreement to recommend a sentence of no

---

[2] Mr. Hernandez-Turcios "committed the instant offense while under a criminal justice sentence in U.S. District Court for the District of Arizona, Docket Number 4:21-CR-01124-SHR-1, (*see* 3:24-CR-00524 WHO, at Dkt. 3, but no additional points were added to this calculation pursuant to U.S.S.G. § 4A1.1(e).

more than 36 months for the "charges set forth in the Information." Dkt. 44 at 9. Probation urges a variance down to 30 months concurrent for each count and the United States joins in that recommendation.

## IV.     Mr. Hernandez-Turcios's Sentencing Range in the Form 12

The Court can sentence Mr. Hernandez-Turcios for the violations set forth in the Form 12 with a sentence of up to two years. The United States recommends a consecutive sentence of 12 months with no supervised release on that violation to follow.

## ARGUMENT

## V.     Applying the Section 3553 Factors to Mr. Hernandez-Turcios

### A.     Nature and circumstances of the offense and history and characteristics of the defendant

Mr. Hernandez-Turcios is 26 years old and has been in this country illegally since he was 17 years old.  He has been deported three times, including in 2021, after having been prosecuted for two illegal reentry cases. He has been selling drugs since 2016.  And while life was likely tough in Honduras, none of the repeated law enforcement interventions was sufficient to deter him from committing more crimes.  Indeed, it appears that as the consequences increased, so did his criminal conduct. For example, in connection with his arrest in this case, Mr. Hernandez-Turcios possessed with the intent to distribute more than 59 gross grams (including packaging) of fentanyl.

There are more aggravating factors than mitigating ones in this case.  They include the repeated and persistent drug dealing by Mr. Hernandez-Turcios since he was 17 years old.  He is now 26.  It also includes his repeated illegal reentries into the United States.  He also failed to take seriously his supervised release conditions including those when he was arrested in June and July 2023. See, Dkt. 8, 11.  He then continued to sell drugs in the Tenderloin into 2024, resulting in his arrest and prosecution in this case.

To his credit, Mr. Hernandez-Turcios has made substantial admissions in this case and has been in custody longer than he has previously been in his past.  That said, however, there are continued concerns about whether he is actually ready to live a law-abiding life.  In that regard, the United States Marshal Service has advised that on February 25, 2025, Mr. Hernandez-Turcios was involved in a fight

at the Santa Rita Jail. The allegation is that Mr. Hernandez Turcios and another inmate assaulted a third inmate. While we do not have specific details, the United States Marshal Service has advised that the two assailants, including Mr. Hernandez-Turcios were being placed in restricted housing and that as a result the United States Marshal Service would need to house them in another facility.

In mitigation, the government acknowledges the tough times Mr. Hernandez-Turcios had growing up. *See* PSR, ¶ 3 on the second page of Probation's Sentencing Recommendation ("the family lived in relative poverty, including the defendant often lacking sufficient food and proper clothing" and his need to work construction jobs starting at age 14). His uncle was also murdered, and another uncle suffered a tragic accident. *Id*. Those facts are truly unfortunate, but they do not excuse his selling drugs that are killing people in the Tenderloin neighborhood of San Francisco.

**B.   Need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; to afford adequate deterrence to criminal conduct; and to protect the public from further crimes of the defendant**

The Tenderloin, defined in the Plea Agreement to include the historic Tenderloin District and much of the South of Market neighborhood, is in crisis. As the Court is well aware, the proliferation of highly addictive, potent, and inexpensive synthetic controlled substances like fentanyl and methamphetamine has exacted a crushing human toll in the Tenderloin. The Tenderloin open-air drug market not only creates suffering for its participants (including staggering amounts of overdoses and fatalities) but also dire externalities for the people and families that live and work in the Tenderloin, as well as for San Francisco itself. The effects of Mr. Hernandez-Turcios's offense, considered as an individual act, are destructive; the effects of the offense, considered in the aggregate, are catastrophic.

There needs to be significant sentence in this case to deter Mr. Hernandez-Turcios and to protect the community. He has had multiple chances to stop his unlawful conduct but has repeatedly failed to do so. With that in mind, and acknowledging the thoughtful nature of the presentence report, the United States urges this Court to fashion a sentence of 30 months on each count concurrently in the New Criminal Case. That should be followed by a consecutive term of 12 months imprisonment for his supervised release violations in the Form 12. When he is finally released, he should be subject to a three-year term of supervised release, with the two special conditions set forth in Plea Agreement, as well as the other conditions attached as Appendix A to that Agreement. The Court should also forfeit

his phone, the money he possessed and his digital scale.

## VI. The necessity of the proposed supervised release special conditions

A three-year term of supervised release is required by statute for the drug-trafficking offense to which the defendant has agreed to plead guilty, 21 U.S.C. § 841(b)(1)(C), and it is essential to this disposition. In particular, the special stay-away condition of release allows the government to accomplish one of its primary goals related to protection of the public: to immediately separate drug traffickers from the Tenderloin (given the defendant has remained in custody from the time of arrest) and to affect a strict stay-away from the Tenderloin for three years. Under the terms of supervised release as contemplated herein, not only will Mr. Hernandez-Turcios be prohibited from engaging in any further unlawful conduct, but he will be prohibited from entering the Tenderloin without prior approval by U.S. Probation:

> Unless authorized by U.S. Probation, the defendant shall neither enter nor be present in the area in San Francisco bordered on the west by Van Ness Avenue, on the north by Geary Street, on the east by Powell Street and 3rd Street, and on the south by Howard Street.

Combined with a suspicion-less search condition, to which the parties have also agreed, Section 3553(a)'s goals of protection of the public and meaningful deterrence will be significantly advanced by the terms of this agreement, and this prosecution's impact on illicit drug trafficking in the Tenderloin will be both immediate and sustained.

He will almost certainly be deported for both his aggravated felony drug conviction and illegal reentry convictions. Just in case he is not, the stay-away condition is also necessary given the circumstances of Tenderloin drug trafficking, where courts in this District have encountered recidivism from previously sentenced defendants, including those who have been removed from the country but who nonetheless returned to sell controlled substances in the Tenderloin. *See, e.g.*, *United States v. Luis Almicar Erazo-Centeno*, 3:23-cr-00002-CRB; *United States v. Gamez-Arguilio*, 3:17-CR-00553-CRB.

On the facts of this case, under the Section 3553(a) factors and given the provisions of the Plea Agreement, the government respectfully submits that the contemplated disposition here is sufficient but not greater than necessary to accomplish the goals of Section 3553(a).

## VII. Disposition of the Form 12

UNITED STATES' SENTENCING MEMORANDUM
24-CR-00390 AND 24-CR-00540 WHO            7

In his plea agreement in the New Criminal Case, Mr. Hernandez-Turcios admitted the facts alleged in Allegations 1 and 8 (and also that he was arrested for dealing drugs in 2023) in the Form 12. The government suggests that the Court accept his admissions to Allegations 1 and 8, dismiss the remaining allegations, and sentence him to 12 months on the Form 12, consecutive to his sentence in the New Criminal Case. Aside from apparently illegally reentering the United States somewhere other than Arizona, he was arrested on three occasions for drug dealing in 2023 in San Francisco and Alameda County according to the Bail Study referenced above. Dkt. 8 and 11. While the substantive counts alleged in the Form 12 for his drug dealing activities in 2023 were later dismissed by San Francisco in favor of the federal prosecution of the New Criminal Case, there should still be a further sanction consecutively for the Mr. Hernandez-Turcios' complete disregard of the conditions of his supervised release.

Thus, a 12-month consecutive sentence is appropriate here, with no supervised release to follow, which would effectively end the Form 12 case and allow Mr. Hernandez-Turcios to serve his time and then be on supervised release for three years on the New Criminal Case. In the unlikely event he is not deported, he would need to report to Probation wherever he is released within 72 hours. The United States hopes that Mr. Hernandez-Turcios is sincere in his expressed desire to make a life for himself in Honduras and that he will heed the admonitions and orders of this Court to leave the country and never return without permission.

**CONCLUSION**

For all the reasons set forth herein, the government recommends that the Court sentence Mr. Hernandez-Turcios to:

1) 30 months incarceration concurrent on each of the two counts in the Information in the New Criminal Case to be followed by a consecutive sentence of 12 months on the Form 12 violations, with no supervised release to follow on that Petition.

2) There should also be three years of supervised release on the New Criminal Case that should commence upon his release from custody on both cases, with the special conditions agreed to by the parties in the Plea Agreement, including the stay-away and suspicion-less search conditions and those other standard conditions set forth in Appendix A to the Plea

Agreement, along with the forfeiture of his seized cash, phone and drug scale.

3) At the conclusion of his sentence on both matters, Mr. Hernandez-Turcios should be released to the custody of ICE so that he can be deported once again.

DATED: March 6, 2025                                   Respectfully submitted,

PATRICK D. ROBBINS
Acting United States Attorney

/s/ *Jeffrey Bornstein*

_____
Jeffrey Bornstein
Assistant United States Attorney